**NORTON COAL CORPORATION, Appellant,**

**v.**

**W. E. MADDOX et al., Appellee.**

Court of Appeals of Kentucky.

June 4, 1965.

Lake & Cook, Hartford, for appellant.

Otto C. Martin, Walter L. Catinna, Hartford, for appellee.

MOREMEN, Chief Justice.

This is an appeal from a judgment of the Ohio Circuit Court in favor of appellees, W. E. Maddox and his wife, against R. N. Robards and his wife, doing business as R. N. Robards Coal Company, and against appellant, Norton Coal Corporation and its surety upon a bond given to discharge an attachment pursuant to KRS 425.305. Norton Coal Corporation has appealed.

Appellant, Norton Coal Corporation, herein called Norton, was a coal operator in Hopkins County. In addition, it was engaged in the coal brokerage business in which capacity it acted as sales agent for R. N. Robards, who was a coal operator. W. E. Maddox and his wife owned certain land in Ohio County which had an underlying No. 9 seam of coal.

In 1957, under an oral agreement, Norton transferred possession of certain mining equipment to Robards, such as tractors, bulldozers, shovels, compressors, et cetera. The agreement, it is contended, was in the nature of a parol conditional sales contract, although the testimony on this point is not convincing that it was other than a regular sale with an agreement as to installment payments of the purchase price and in the event of default that the payments should be treated as rent.

Up to this time Robards had been operating in Hopkins County and in 1958 he moved the scene of his operations to Ohio County.

On July 16, 1958, Norton sent a letter to Robards which seemed to confirm the agreement of Robards to pay 30¢ per ton as payment on the equipment and also provided that if the equipment was returned all payments would be treated as rent. This letter was not recorded (if it could have been recorded) and no mortgage or other lien was obtained on the equipment. The letter, which also set out previous rental and cash payments, appears to be only a formal recognition of the debt rather than an attempt to secure the debt by lien on the equipment.

On December 17, 1958, Maddox entered into a written lease contract with Robards for the purpose of stripping coal from the land owned by him. The lease was for a term of fifteen years or until the coal could no longer be mined profitably. The royalty was 35¢ per ton with a guaranteed minimum of $12,000 per year.

On January 23, 1959, the lease was recorded properly in the office of the clerk of the county court of Ohio County. It contained this provision:

"The lessors are hereby given a lien upon all machinery and equipment, material or appliances and supplies owned by the lessee and used by them on the premises herein leased to secure them in the payment of the royalties herein provided for."

Soon after the execution and recordation of the lease Robards began to mine coal.

The operation from the beginning was not successful and within a week or so after the mining operations began, on January 30, 1959, Norton and Robards entered into another agreement. Under the terms of this agreement Robards acknowledged indebtedness to Norton for cash advances, for operating expenses and for monthly payments in arrear on equipment. On the whole this agreement also appears to be merely a formal recognition of the debt.

It is difficult, even after a most thorough search of this most unsatisfactory record, to determine the exact need, purpose, or for that matter, the content of the various agreements, both oral and written, which were entered into by Robards and Norton. It appears certain, however, that during the entire period of the mining operation Norton had been making cash advances and in general supporting Robards in his ventures and it is certain that Norton knew of the financial difficulties of Robards when, in March 1960, after Robards had terminated the mining operation a chattel mortgage was executed from Robards to Norton upon the property involved.

This suit began when Maddox sought to recover the sum of $6,394.81, the amount due for royalties for coal which had been stripped and mined from the property of Maddox. A general order of attachment was levied upon the mining equipment owned by Robards and the sheriff took possession of the equipment. While the property was in the hands of the sheriff Norton executed a bond to discharge the attachment under KRS 425.305. The court entered judgment by which the claim of Maddox was held to be a good and valid claim upon the equipment. Judgment was entered in the amount of the claim and Norton was adjudged to be liable for said judgment under the attachment bond.

The trial court in his finding of facts held among other things that:

"The close business relationship between Robards and Norton Coal Corporation, as set out in the evidence herein, creates in the Court's mind a case of double dealing or 'dealing under the table.' The execution of the alleged sales contract and rental contract were dealings between Robards and Norton Coal Corporation, unrecorded and outside any knowledge of the plaintiffs.

"There is no doubt in this Court's mind that Robards was indebted to Norton Coal Corporation, but there is a controlling doubt that it had any kind of enforceable lien upon any of the equipment used in the operation of plaintiffs' property, and it is unbelievable that the lien set up in the lease in favor of plaintiffs was without the knowledge of the Norton Coal Corporation, when viewed in the light of their long business relation."

We have no difficulty in reaching the same conclusion. Norton could, at any time before the equipment was moved on land belonging to Maddox, have protected itself by a formal recordation of a conditional sales contract, if that was what was intended. In such a case perhaps Maddox would not have executed the lease. In any event, the lien created by the lease was superior to any unrecorded lien concerning which Maddox had no knowledge.

On this appeal complaint is made for the first time that the trial judge erroneously identified the property. A search of the record fails to show that there was such an error. The evidence introduced fails to identify the property by serial number or otherwise so we are unable to say that the court was in error. Furthermore appellant in his brief has failed to convince us that the wrong property was seized under the order of attachment.

Judgment affirmed.